UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIMA LS PLC,<br><br>                              Petitioner,<br><br>v.<br><br>NASSAU REINSURANCE GROUP HOLDINGS, L.P., PHILLIP J. GASS JR., and KOSTAS CHELIOTIS,<br><br>                              Respondents. | CASE NO. 15-MC-0359<br><br>CASE PENDING IN DISTRICT OF CONNECTICUT:<br>No. 3:12-CV-001122 (WWE) |

### DECLARATION OF JESSICA S. CAREY IN FURTHER SUPPORT OF LIMA LS PLC'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS

JESSICA S. CAREY, a member of the Bar of the State of New York, declares as follows:

1. I am a member of the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, counsel for Petitioner Lima LS plc ("Lima") in the above-captioned matter. I respectfully submit this declaration in further support of Lima's Rule 45 Motion to Compel Compliance with Subpoenas (the "Motion"). The facts set forth below are based on my personal knowledge.

2. On November 17, 2015, I appeared before the Court with respect to the Motion, along with Evan Kubota, an associate at my firm. Shireen Barday and David MacIsaac of Kirkland & Ellis LLP appeared on behalf of Respondents Nassau Reinsurance Group Holdings L.P., Phillip J. Gass Jr., and Kostas Cheliotis (collectively, the "Nassau Parties"). During the November 17 hearing, the Court stated that the parties should meet and confer cooperatively and in good faith about the Nassau Parties' production of documents responsive to two of the requests (nos. 7 and 8) in Lima's Subpoenas. The Court scheduled another hearing

for November 24, one week later. As the parties exited the courtroom, I asked Ms. Barday about her availability for a meet and confer. She indicated that she would get back to us, and later that evening offered to speak on November 19, two days later.

3. At 3:30 PM on November 19, Mr. Kubota and I spoke with Ms. Barday by telephone. We asked that the Nassau Parties (1) prioritize the review and production of documents responsive to Lima's request nos. 7 and 8 that are likely not available from the defendants in the underlying action, and (2) provide general information about the types of documents that are available to them and responsive to the Subpoenas. Mr. Kubota summarized this meet and confer in an e-mail to Ms. Barday, who responded with various objections, but stated that she would "endeavor to provide a status update tomorrow."

4. I understand that Ms. Barday called Mr. Kubota at 6:30 PM on Friday, November 20, to state that the Nassau Parties were still gathering information and expected to provide a substantive response on Sunday, November 22. Ms. Barday also indicated that she would convey Lima's request for "general information" about responsive documents to the Nassau Parties. Again, Mr. Kubota summarized the call in an e-mail to Ms. Barday.

5. We next heard from the Nassau Parties' counsel on the afternoon of Sunday, November 22, when I understand David MacIsaac spoke with Mr. Kubota by telephone. I understand that Mr. MacIsaac indicated that he had been reviewing potentially responsive documents, asked about the Nassau Parties designating a production as confidential, and said they hoped to be in a position for a more substantive call that evening. I understand that Mr. Kubota reserved rights with respect to the confidentiality designation, but forwarded Mr. MacIsaac a copy of the protective order in the underlying action.

6. We did not hear from Ms. Barday or Mr. MacIsaac again on November 22, so yesterday morning I called Ms. Barday and Mr. MacIsaac for a status update. Both were unavailable, so we followed up with an e-mail and left a message with Mr. MacIsaac's assistant. Exhibit A is a true and correct copy of the e-mail exchanges described above.

7. We finally spoke with Ms. Barday and Mr. MacIsaac at 5:45 PM yesterday (November 23). Contrary to our expectations, Ms. Barday asserted that the Nassau Parties had identified no documents responsive to our request no. 7, subject to the qualification that she had only asked the Nassau Parties to search for documents concerning any "independent" valuation Nassau might have conducted with respect to the Lima Portfolio or policies issued by Phoenix. We asked if the Nassau Parties had identified any responsive Phoenix-related valuation documents, regardless whether created by her clients. Ms. Barday stated she was "not willing to take that request" to her clients "at this time" and stated that she had specifically instructed her clients to exclude from their searches responsive information (including valuation-related information) within their possession that might have originated from any source other than the Nassau Parties themselves. She asserted that conducting searches for responsive information without excluding information provided by Phoenix "could possibly be burdensome" and was contrary to the Court's instructions.

8. With respect to our request no. 8, Ms. Barday stated that the Nassau Parties had identified responsive documents, but all of them were allegedly privileged or subject to the "business strategy immunity" or some other purported protection. We requested that Ms. Barday ask her clients to search for documents from Phoenix or others responsive to this request, which covers litigation with Lima as well as communications with regulators concerning such

3

litigation or Phoenix's potential liability in such matters. Ms. Barday refused, stating that the Court's instruction was limited to documents authored by Nassau.

9. Ms. Barday indicated that the Nassau Parties' documents were collected by Mr. Gass and Mr. Cheliotis, who provided the documents to her firm for review. Ms. Barday refused to provide any details, or claimed that she did not know the specifics, as to how the documents were collected. Among other things, she refused to disclose the volume of documents she had received from the Nassau Parties[1] and what types of documents were collected (*e.g.*, emails, presentations, Excel files)[2]; refused to tell us if there was an index for the data room for the Merger Transaction, or indeed whether a data room even existed; and refused to disclose how many documents were being withheld on privilege or other grounds.

10. We indicated that we were surprised by Ms. Barday's positions, which are contrary to our understanding of the Court's instructions on November 17, and our expectation that the Nassau Parties' counsel would meet and confer in good faith regarding responsive documents that the Nassau Parties could produce without undue burden.

11. We requested again that Ms. Barday ask the Nassau Parties whether they have any readily accessible documents potentially responsive to requests 7 and 8, regardless of whether the documents may have originated from Phoenix or some other party. Ms. Barday refused, repeatedly stating that she would not respond unless specifically directed by the Court and asserting that she viewed such requests as "outside the scope" of the Court's instructions on

---

[1] Ms. Barday said she would endeavor to determine the volume of documents reviewed prior to the November 24 court conference, but despite repeated requests, refused to agree to make that information available to Lima prior to the hearing.

[2] Ms. Barday indicated that the documents were provided in electronic form and included "multiple formats," but would not provide further details. Ms. Barday also stated that her clients did not search emails, but instead looked for "standalone documents." She later stated that she needed to confirm that emails were not searched. She also indicated that conducting email searches would be burdensome, but was unable to provide any details of any alleged burden when asked.

4

November 17. Ultimately, she declared the meet and confer over and refused to answer any further questions. In total, the call lasted approximately 40 minutes.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2015.

_____
Jessica S. Carey